COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-06-146-CV

IN THE INTEREST OF

D.R., C.D., JR., Q.R., E.R., 

AND Y.R., CHILDREN

------------

FROM THE 231ST DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Monica R. appeals from the trial court’s order terminating her parental rights to each of her five children D.R., C.D., Jr., Q.R., E.R., and Y.R.
(footnote: 2)  In three points, Monica challenges the legal and factual sufficiency of the evidence in support of the court’s termination findings, as well as the court’s termination of her parental rights under section 161.001 of the Texas Family Code.  We will affirm.

II.  Factual and Procedural Background

Monica R. and her long-time companion, Charles D., are the natural parents of C.D., Jr., Q.R., E.R., and Y.R.
(footnote: 3)  Although Monica and Charles were never married, the two lived together intermittently over the years and generally shared in the responsibility of providing for all five children.  Each child suffers from various psychological and/or emotional disorders that require treatment by way of various daily prescription medications.  In addition to the issues facing the children, Monica also suffers from severe mental retardation, post traumatic stress disorder, manic depression, and anxiety. 

Shortly after giving birth to E.R. in 1999, Monica discovered that both she and Charles were HIV-positive and that, as a result, E.R. had also been infected with the HIV virus.  Doctors immediately began treating E.R.’s HIV with three prescription medications that were to be administered twice daily.  Because the HIV virus is capable of developing a resistence to preventive medications that are not administered consistently, E.R.’s physician explained that it was imperative that E.R. continue to take his medication regularly after being released from the hospital.  However, after discussions with Monica, doctors were hesitant to release E.R. to her out of concerns that her mental deficiencies would prevent her from administering the child’s medication on a consistent basis.  E.R.’s treating physician reported these concerns to the Texas Department of Family and Protective Services (TDFPS), and an agreement was ultimately reached between Monica, Charles, E.R.’s doctor, and TDFPS that the child would be released to Charles so that he could properly administer the medication.  However, in 2000, Charles was arrested and subsequently incarcerated for violating his parole, thereby prompting Monica to take possession of E.R.   

In July 2004, TDFPS received a referral alleging that Monica’s children were being physically neglected.  During the course of its investigation, TDFPS discovered that the manager of Monica’s apartment complex was in the process of evicting her from the property due, in part, to a fire that had originated in her unit.  Monica informed the TDFPS investigator that the fire began as a result of C.D., Jr.’s turning on the stove while she was next door using her neighbor’s telephone.  Upon completing its investigation, TDFPS removed all of the children from Monica’s possession and placed them with Charles, who had been living with a friend since being released from prison in the fall of 2003.  Despite the removal, TDFPS granted Monica supervised visitation, and she continued to maintain daily contact with the children. 

On April 12, 2005, Carol Lieser, a nurse affiliated with the children’s elementary school, contacted TDFPS after examining both C.D., Jr. and Q.R. to report that the children were being physically neglected.  During the course of her examination, Lieser discovered a green, oozing mold covering C.D., Jr.’s entire head.  According to Lieser, the child’s head had no hair and gave off a very strong, nauseating odor.  Lieser was finally able to determine that C.D., Jr. was suffering from an untreated scalp infection after Monica informed her that Charles routinely shaved the children’s heads with a dull clipper.  Moreover, upon examining Q.R., Lieser discovered several scars and numerous lesions all over the child’s body, in addition to a large, infected blister on Q.R.’s hand.   Following Lieser’s referral, TDFPS investigated and found reason to believe the children were being neglected.  These findings prompted TDFPS to take the children into protective custody and to seek termination of Monica’s, Charles’s, and Derrick’s respective parental rights.  Following a bench trial, the trial court entered an order to that effect and this appeal followed. 

III.  Parent-Child Termination

A parent’s rights to “the companionship, care, custody, and management” of his or her children are constitutional interests “far more precious than any property right.”  
Santosky v. Kramer
, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 1397 (1982); 
see also In re M.S.
, 115 S.W.3d 534, 547 (Tex. 2003).  “While parental rights are of constitutional magnitude, they are not absolute.  Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.”  
In re C.H.
, 89 S.W.3d 17, 26 (Tex. 2002).  In a termination case, the State seeks not just to limit parental rights but to end them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child’s right to inherit.  
Holick v. Smith
, 685 S.W.2d 18, 20 (Tex. 1985); 
see 
Tex. Fam. Code Ann.
 § 161.206(b) (Vernon Supp. 2006)
.  We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent.  
Holick
, 685 S.W.2d at 20-21; 
In re E.S.S.
, 131 S.W.3d 632, 636 (Tex. App.—Fort Worth 2004, no pet.).

In proceedings to terminate the parent-child relationship brought under section 161.001 of the Texas Family Code, the petitioner must establish at least one ground listed under subdivision (1) of the statute and must also prove that termination is in the best interest of the child. 
 Tex. Fam. Code Ann.
 § 161.001; 
In re J.L.
, 163 S.W.3d 79, 84 (Tex. 2005).  Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact.  
Tex. Dep’t of Human Servs. v. Boyd
, 727 S.W.2d 531, 533 (Tex. 1987).

Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by clear and convincing evidence.  
See
 
Tex. Fam. Code Ann.
 § § 161.001, 161.206(a); 
In re J.F.C.
, 96 S.W.3d 256, 263 (Tex. 2002).  This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings.  
In re G.M.
, 596 S.W.2d 846, 847 (Tex. 1980); 
In re K.W.
, 138 S.W.3d 420, 425 (Tex. App.—Fort Worth 2004, pet. denied).  It is defined as the “measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.”  
Tex. Fam. Code Ann.
 § 101.007 (Vernon 2002).

A.  Legal and Factual Sufficiency

In her first two points, Monica contends that the evidence presented at trial was legally and factually insufficient to support the trial court’s findings  that she (1) knowingly placed or knowingly allowed her children to remain in conditions or surroundings which endangered their physical or emotional well-being and (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered their physical or emotional well-being. 
 Id.
 § 161.001(1)(D), (E).   

B.  Standard of Review

The Texas Supreme Court recently clarified the appellate standards of review to be applied to legal and factual sufficiency of the evidence challenges in light of the clear and convincing evidence burden of proof in termination proceedings. 
 See J.F.C.
, 96 S.W.3d at 264-68 (discussing legal sufficiency review); 
C.H.
, 89 S.W.3d at 25 (discussing factual sufficiency review).  Because termination findings must be based upon clear and convincing evidence, not simply a preponderance of the evidence, the supreme court has held that the traditional legal and factual standards of review are inadequate. 
 J.F.C.
, 96 S.W.3d at 265; 
C.H.
, 89 S.W.3d at 25. Instead, both legal and factual sufficiency reviews in termination cases must take into consideration whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction about the truth of the matter on which the State bears the burden of proof. 
 J.F.C.
, 96 S.W.3d at 265-66; 
C.H.
, 89 S.W.3d at 25.  With respect to a legal sufficiency point, we “look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.” 
 J.F.C.
, 96 S.W.3d at 266.  In determining a factual sufficiency point, we must give due consideration to evidence that the fact-finder could reasonably have found to be clear and convincing and then determine whether, based on the entire record, a fact-finder could reasonably form a firm conviction or belief that the parent violated one of the provisions of section 161.001 and that the termination of his or her parental rights would be in the child’s best interest. 
 Tex. Fam. Code Ann.
 § 161.001; 
City of Keller v. Wilson, 
168 S.W.3d 802, 827 (Tex. 2005); 
C.H.
, 89 S.W.3d at 25.

C.  Endangerment Finding

We first review the evidence supporting the trial court’s finding under section 161.001(1)(E) of the Texas Family Code that Monica engaged in conduct that endangered the children’s physical or emotional well-being. 
 Tex. Fam. Code Ann.
 § 161.001(1)(E).  

 Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child’s well-being was the direct result of the parent’s conduct, including acts, omissions, or failures to act.  
In re R.D.
, 955 S.W.2d 364, 368 (Tex. App.—San Antonio 1997, pet. denied); 
Dupree v. Tex. Dep’t of Protective & Regulatory Servs.
, 907 S.W.2d 81, 83-84 (Tex. App.—Dallas 1995, no writ).  Termination under section 161.001(1)(E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. 
Tex. Fam. Code Ann.
 § 161.001(1)(E); 
In re D.T.
, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); 
In re K.M.M.
, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.).

Endangerment, as that term is used in the statute, means to expose to loss or injury, to jeopardize.  
Boyd
, 727 S.W.2d at 533; 
see also In re M.C.
, 917 S.W.2d 268, 269 (Tex. 1996).  Although endangerment requires more than a mere threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the parent’s conduct be directed at the child or that the child actually suffer injury. 
Boyd
, 727 S.W.2d at 533.  The specific danger to the child’s well-being may be inferred from parental misconduct standing alone.  
Id.
; 
In re R.W.
, 129 S.W.3d 732, 738 (Tex. App.—Fort Worth 2004, pet. denied).  To determine whether termination is necessary, courts look to parental conduct engaged in both before and after the child’s birth.  
In re D.M.
, 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.).  

The record in this case indicates that since 1994, TDFPS has received approximately thirty-one referrals regarding the children.  Rosalyn Mitchell, an investigator with TDFPS, testified to some of the allegations made against Monica in those referrals.  According to Mitchell, the agency received a report in 1997 alleging that Monica had pulled D.R.’s hair out of her head, causing D.R. to have bald spots.  Mitchell also stated that in 1998, another individual filed a report alleging physical abuse against Monica after observing numerous bruises on D.R.’s body.  TDFPS records show that additional referrals were filed against Monica in 2002 after she was allegedly seen “yanking D.R. by the arm” and slapping her in the face and after scratch marks were seen on both D.R. and C.D., Jr. 

The evidence at trial also showed that Monica failed to properly administer E.R.’s HIV medication while he remained in her care.  According to Mitchell, TDFPS became aware of this allegation in 2002 through referrals that were filed with the agency.  Moreover, E.R.’s treating physician, Dr. Donald Murphy, also testified at trial that he was able to conclude, through viral load testing, that Monica was not consistently administering E.R.’s medication. Murphy explained that such inconsistent treatment would eventually enable the virus to build up a resistence to the medication and become untreatable.  The record also indicates that during their consultations, Monica was unable to describe to Murphy any of the medications or the dosages that she claimed to be administering to E.R. on a daily basis.  However, Murphy testified that Monica eventually admitted to him that she had allowed E.R.’s medications to run out and had not refilled them in several months.  This was later confirmed when Murphy reviewed pharmacy records that were admitted into evidence and discovered a ninety-day period in which Monica failed to refill any of E.R.’s prescriptions.  

Evidence in the record also indicates that on at least two occasions, Monica left the children home alone.  Pamela Cobb, Y.R.’s foster mother, testified that Y.R. told her that “she’s very afraid when mommy leaves her home alone.”  When Cobb asked Y.R. where Monica would go when she was left alone, the child responded by saying “I don’t know.  I would just be home alone, and I would be afraid.”  Additionally, on the day of the apartment fire, Monica told Mitchell that, prior to starting the fire, C.D., Jr. had been next door with her while she used her neighbor’s telephone.  However, Y.R. informed Cobb that Monica did not discover the fire until she returned home with Y.R. from daycare and found C.D., Jr. in the apartment alone.  Cobb also testified that shortly after taking Y.R. into her home, she noticed a very infected sore on the child’s right knee along with several scars and bruises on her lower back. 

Additionally, the evidence shows that Y.R. was sexually abused while in Monica’s care.  The record indicates that shortly after being placed in foster care, Y.R. began acting out sexually with Barbie dolls, pillows, and stuffed animals.  When questioned about her behavior, Y.R. informed Cobb that her brother E.R. had repeatedly “touched” her inappropriately while she was residing with Monica.  Y.R. told Cobb that, after learning of these instances, Monica spanked E.R. and told him to “never touch her again.”  However, the record indicates that, despite Y.R.’s outcry, Monica repeatedly allowed the children to remain alone together and the abuse continued.  According to Cobb, Y.R. stated that after she informed Monica of the continuing abuse, Monica told her to “never tell anyone that he’s doing that.” 

Nurse Carol Lieser also testified at trial regarding her treatment of C.D., Jr. and Q.R. in April 2005.  According to Lieser, Monica arrived at the clinic in possession of a long stick, which she used to control the children by hitting them across the legs.  Lieser also stated that, during the course of her examination, she discovered a number of scars, burns, and healed circular lesions all over the children’s bodies.  Lieser classified the wounds as “old data” and stated that these injuries could have been inflicted upon the children years ago.  

Monica now contends that she can not be held accountable for any neglect that the children may have suffered after being removed from her care in July 2004.  She 
argues that by allowing the children to remain with Charles, as ordered by TDFPS, she in no way endangered their physical or emotional well-being because she had no control over their conditions or surroundings. 
  However, this assertion overlooks the fact that, prior to July 2004, Monica did in fact engage in acts and omissions that endangered her children’s well-being.  As a result, such conduct may serve as a proper justification for the trial court terminating her parental rights.  
See
 
R.D.
, 955 S.W.2d at 368; 
Dupree,
 907 S.W.2d at 83-84. 

Monica also contends that poverty is not sufficient to support the termination of her parental rights.  We agree that poverty is not sufficient to establish an endangering environment. 
Doyle v. Tex. Dept. of Protective & Regulatory Servs.
, 16 S.W.3d 390, 398 (Tex. App.—El Paso 2000, pet. denied).  However, in this case, Monica’s conduct serves as the underlying basis for the court’s endangerment finding at issue.  Therefore, her poverty argument fails.

 After carefully reviewing the entire record, looking at all the evidence in the light most favorable to the court’s finding, and giving due consideration to evidence that the fact-finder could reasonably have found to be clear and convincing, we hold that a reasonable trier of fact could have formed a firm belief or conviction that Monica engaged in conduct that endangered her children’s physical or emotional well-being.   Although Monica also challenges the legal and factual sufficiency of the evidence with respect to the trial court’s additional findings under section 161.001(1)(D) and (E), we need not address these points.  When multiple grounds for termination are sought, we must uphold the court’s findings if any of those grounds are supported by evidence in the record.  
See 
Tex. Fam. Code Ann.
 § 161.001(1)
; D.M.
, 58 S.W.3d at 813;
 In re S.F.
, 32 S.W.3d 318, 320 (Tex. App.–San Antonio 2000, no pet.)
.  
Therefore, because the evidence is legally and factually sufficient to support the court’s finding that Monica engaged in conduct that endangered her children’s well-being, we need not address her remaining sufficiency points.  
See
 
Tex. R. App. P.
 47.1. 

D.  “Knowing” Finding

In support of her legal and factual sufficiency challenge, Monica contends that she lacked the mental capacity due to her significant intellectual deficiencies to either knowingly endanger her children or knowingly allow them to be endangered by others.  Therefore, according to Monica, because a prerequisite to terminating an individual’s parental rights under both subsections (D) and (E) is that the parent knowingly engage in some type of conduct that endangers the children, the court’s termination of her parental rights pursuant to these two provisions was improper. 

However, although both subsections (D) and (E) reference knowledge on the part of the parent as a necessary element in terminating the parent-child relationship, subdivision (E) requires that a parent have knowledge only that others are engaging in endangering conduct. 
 Tex. Fam. Code Ann.
 § 161.001(1)(E).  The parent need not know that his or her own conduct is dangerous for a termination order pursuant to section 161.001(1)(E) to be proper. 
 Id.
; 
see Carter v. Dallas County Child Welfare Unit,
 532 S.W.2d 140, 142 (Tex. Civ. App.—Dallas 1975, no writ).  
Moreover, when a parent’s mental state allows or forces the parent to engage in conduct that endangers the physical or emotional well-being of the children, that conduct is evidence bearing upon the advisability of terminating the parent-child relationship.
  Carter, 
532 S.W.2d at 142.

In this case, even if we were to accept Monica’s contention that she lacked the mental capacity to knowingly endanger her children, it cannot be said that the trial court erred in terminating her parental rights.  Following the presentation of all of the evidence, the court, as fact-finder, found that Monica herself engaged in conduct that endangered the physical and emotional well-being of her children.  
See
 
Tex. Fam. Code Ann.
 § 161.001(1)(E).  Based upon that finding, the court was statutorily authorized to terminate her parental rights even if she did not know that her conduct was endangering her children’s well-being. 
 See 
Tex. Fam. Code Ann.
 § 161.001(1)(E)
; 
Carter, 
532 S.W.2d at 142.  Accordingly, we overrule Monica’s first two points.

IV.  Texas Family Code Section 161.003

In her final point, Monica challenges the trial court’s termination of her parental rights under section 161.001 of the family code asserting that, because she suffers from a mental deficiency, TDFPS was required by statute to initiate this termination suit pursuant to section 161.003 of the Texas Family Code.
  

Section 161.003 of the Texas Family Code authorizes termination when a parent is, by reason of a mental condition, “unable to provide for the physical, emotional, and mental needs of the child” and certain other factors exist.  
Tex. Fam. Code Ann.
 § 161.003 (Vernon 2003).  Monica cites no authority in her brief, nor have we found any, to support her contention that termination proceedings must be brought exclusively pursuant to section 161.003 any time the parent at issue suffers from a mental deficiency.  Rather, Texas case law overwhelmingly supports TDFPS’s contention that parental rights may properly be terminated under either section 161.001 or section 161.003 in cases in which a parent’s mental illness or deficiency is relevant.  
See In re M.F., 
173 S.W.3d 220, 221 (Tex. App.—Dallas 2005, no pet.); 
In re N.H., 
122 S.W.3d 391, 401 (Tex. App.—Texarkana 2003, pet. denied);
 
In re B.L.M.
,
 
114 S.W.3d 641, 648 (Tex. App.—Fort Worth 2003, no pet.); 
In re W.E.C., 
110 S.W.3d 231, 240 (Tex. App.—Fort Worth 2003, no pet.);
 Salas v. Tex. Dep’t of Protective & Regulatory Servs., 
71 S.W.3d 783, 787-88 (Tex. App.—El Paso 2002, no pet.); 
In re C.E.M.
, 64 S.W.3d 425, 429-27 (Tex. App.—Houston [1st Dist.] 2000, no pet.).  Therefore, we hold that the trial court did not err in terminating Monica’s parental rights under section 161.001 of the Texas Family Code, and we overrule her third point.  
See 
Tex. Fam. Code Ann.
 § 161.001(1)(E).

V.  Conclusion

Having found the evidence legally and factually sufficient to support the termination finding under section 161.001(1)(E), we affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL F: GARDNER, WALKER, and MCCOY, JJ.

DELIVERED:  January 25, 2007

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
The trial court’s order also terminated the parental rights of the children’s respective natural fathers Derrick T. and Charles D.  However, neither Charles nor Derrick have appealed this order.   

3:
Additionally, Monica is the natural mother of a fifth child, D.R., who is also the subject of this termination suit.  However, Monica has not had any contact with D.R.’s natural father, Derrick T., in the past two years.